IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| TERRY THOMAS,<br><br>    PLAINTIFF,<br><br>v.<br><br>THE GUARDIAN LIFE<br>INSURANCE COMPANY OF<br>AMERICA,<br><br>    DEFENDANT. | )<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO.<br>)  _____<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Terry Thomas ("Plaintiff") brings this action for violations of the Employee Retirement Income Security Act of 1974 committed by The Guardian Life Insurance Company of America ("Guardian") in connection with the provision of ERISA-governed disability benefits under a group insurance plan sponsored by Plaintiff's former employer, Arkal Automotive USA Inc. In support of the relief requested herein, Plaintiff alleges the following upon personal knowledge as to himself and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys:

## INTRODUCTORY STATEMENT

1. This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA"). This suit is brought pursuant to 29 U.S.C. § 1132(a) to secure disability benefits due to Plaintiff through a group insurance policy sponsored by Arkal Automotive USA Inc. providing for long-term disability and group life insurance benefits, among other things.

2. Plaintiff seeks all benefits to which he may be entitled should this Court determine he is "disabled," including specifically long-term disability benefits and group life waiver-of-premium benefits under the group policy issued or administered and underwritten by Guardian.

3. Plaintiff seeks benefits based on the conditions documented in his medical records, including bilateral shoulder pain, s/p shoulder injuries and repair surgeries, arthritis, degenerative disc disease and radiculopathy, neuropathic pain in legs, peripheral neuropathy, muscle weakness and leg pain, poorly controlled diabetes, diabetic neuropathy, dizziness, hypertension, peripheral vascular disease, distal aortic arch disease, hyperlipidemia, severe carotid IMT thickness, and distal aortic arch disease.

4. Mr. Thomas's conditions, according to Dr. Dorchak, one of his primary providers, prevent him from returning to work even part time in a sedentary capacity

– a finding that Guardian itself made just one year ago on Plaintiff's disability waiver of premium claim in June 2022.

## JURISDICTION

5. Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" as that term are is defined within 29 U.S.C. § 1001, et. seq. The Plan "may be found" within this district.

6. Jurisdiction is further appropriate under 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties.

7. Venue is appropriate in this District Court pursuant to 29 U.S.C. § 1132(e)(2), in that the employee welfare benefit plan at issue was at least partly administered in this District and Defendant may be found or resides in this District.

## PARTIES

8. Plaintiff Terry Thomas is a participant in the Plan at issue and thus entitled to benefits available thereunder.

9. Defendant Guardian is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

10. Guardian is a "fiduciary" of The Plans as that term is defined by 29 U.S.C. § 1002(21).

11. One of Guardian's designated agents for service of process is:

**The Guardian Life Insurance Company of America**
**c/o Corporation Service Company Inc.**
**641 South Lawrence Street**
**Montgomery, AL 36104**

12. Guardian is an entity exercising authority or control respecting the management or disposition of Plans' assets or the personnel exercising said authority over Plan assets.

13. Guardian is an entity providing services to The Plans at issue.

14. Guardian is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined by 29 U.S.C. § 1002(14).

## THE PLAN

15. Arkal's long-term disability and group life insurance plans are funded entirely through a single group policy sold by Guardian, the company which also underwrote this policy and identified itself as the claim administrator for all policy benefits.

16. This group policy was purchased by Plaintiff's employer to confer certain benefits upon Plaintiff and other employees.

4

17. As a result, this policy qualifies as an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1), and Plaintiff qualifies as a participant and/or beneficiary under the Plan as that term is used in 29 U.S.C. § 1132.

18. Under the terms of the LTD plan coverage providing for benefits accruing upon the Plaintiff becoming disabled, Plaintiff is "disabled" as the Plan defines that term.

19. The policy defines disability as follows for eligibility for long-term disability benefits:

**Disability or Disabled:**

These terms mean that a current Sickness or Injury causes impairment to such a degree that You are:

- Not able to perform, on a Full-Time basis, the major duties of Your Own Occupation during the Elimination Period and the Own Occupation period.

- Not able to perform, on a Full-Time basis, the major duties of any Gainful Work after the end of the Own Occupation period.

20. The policy defines "Own Occupation" as follows:

**Own Occupation:** This term means:

- The occupation(s) You are routinely performing for Your Employer immediately prior to the first date of Disability, and is further defined as follows. Own Occupation:
  - Includes any employment, trade, or profession that is substantially similar in terms of tasks, functions, skills, abilities, knowledge, training and experience, required by Employers from those engaged in a particular occupation in the general labor market in the national economy; and

5

- Is not defined with reference to a specific Employer or specific location or particular work environment; and
- Only includes the occupation or occupations for which You are covered under this Certificate, and
- Generates the Insured Earnings covered by this Certificate.

21. For eligibility for its group life waiver of premium benefit, the policy defines disability more expansively, as follows:

Total Disability or Totally Disabled means, due to sickness or injury, you are:

(a) not able to perform any work for wages or profit; and

(b) you are receiving regular doctor's care appropriate to the cause of disability.

22. There are no Plan documents indicating that Guardian has an enforceable grant of discretionary authority as Plan or Claims Administrator or that any express delegation has occurred.

## GUARDIAN'S LIABILITY

23. Plaintiff's documented medical conditions for which he has received treatment include a number of health issues as noted above in this Complaint. Among these conditions is Plaintiff's chronic pain which he suffers due to past injuries to his shoulders, and degenerative disc disease which are complicated by a developing neuropathy and osteoarthritis.

24. Plaintiff's objective pain generators include these neuropathies and documented degeneration of his spine as well as the after-effects of the injuries he

sustained in July of 2020 when he fell from a ladder onto concrete steps at his home while working on his roof.

25. Guardian originally found Plaintiff to be disabled from working in his own occupation pursuant to his LTD coverage terms based on the injuries he sustained in that fall, including the damage done specifically to his shoulder. Because his occupation involved a heavy physical demand level, Guardian did not have to determine there to be a significant level of improvement for him to qualify for benefits.

26. The severity of Plaintiff's conditions and related functional limitations, however, quickly worsened due to the degenerative nature of his assessed conditions, as one of Guardian's nurse reviewers acknowledged in an internal medical review on June 7, 2021:

```
ASSESSMENT: MED RECS SUPPORT L&R PROVIDED BY SPINE SURGEON IN 4/15/21 APS
LIFT CARRY PUSH PULL UP TO 10L OCCASIONALLY AS EVIDENCED BY X RAY OF LUMBAR
SPINE SHOWS DECREASED DISC HEIGHT & L4-5 FACET ARTHROPATHY OF L4-5 FACET
```

27. According to the remainder of this note, this APS (or Attending Physician Statement) was supplied by Dr. Dorchak, one of Plaintiff's principal providers.

28. The remainder of that April 15, 2021, assessment confirmed also Plaintiff was not capable of sitting, standing or walking for greater than 20 to 30 minutes at a time.

29. The claims team handling the matter at that time recognized the addition of Plaintiff's back condition in particular as a new ongoing basis for his entitlement to LTD benefits and continued to approve the claim.

30. A few months later, in September 2021, Plaintiff learned that the Social Security Administration found him to be vocationally qualified for disability benefits under its rules, which depend on a claimant's ability to engage in any "gainful" – meaning remunerative – activity.

31. Guardian, which had been intently following that process because of its interest in Plaintiff obtaining a benefit that under the policy creates an offset to Guardian's monthly liability, was informed of this approval and sprang into action to institute its offset and obtain whatever overpayment it calculated it was owed.

32. Shortly afterward, Plaintiff's claim was reassigned to Caryn Block whose claim team later was responsible for terminating Plaintiff's LTD benefit at issue in this action.

33. In the months that followed, Guardian continued to request regularly the completion of these same Attending Provider Statements ("APS") that Dr. Dorchak had furnished in April 2021 (and before).

34. In an APS dated October 4, 2021, Dr. Dorchak again reported the same functional restrictions as before, but with worsening symptoms relating to those limitations.

35. Guardian obtained that APS, and thereafter recorded its findings, as part of its handling of Plaintiff's group life waiver of premium claim according to the August 21, 2021, cover letter attached to that form sent to Dr. Dorchak.

36. Based on that APS and the records collected up to that point in October 2021, the claims team responsible for handling Plaintiff's waiver of premium benefit found Plaintiff to be entitled to receive that waiver under the far more restrictive disability definition applicable to that benefit which requires the claimant to be disabled even from sedentary part time work.

37. On June 1, 2022, Dr. Dorchak returned another APS at Guardian's request (and provided supporting records) that once again confirmed Plaintiff's inability to return to work even in a part time sedentary capacity.

38. Two days later, Guardian's life waiver of premium claims team informed Plaintiff in a letter dated June 3, 2022, that he remained "eligible for waiver of premium of your group life insurance."

39. At precisely that same time, Guardian also initiated a "change in definition" (or "CID") review pertaining to Plaintiff's continuing eligibility for LTD.

40. This process began with an interview on June 4, 2022, but involved also the same requests for information that were applicable to the life waiver of premium claim administration occurring simultaneously. It was at this point the two reviews

began to inexplicably diverge.

41. In a claim note dated October 25, 2022, a Guardian nurse case manager on the LTD side recounted exactly the same severe conditions and functional limitations that Guardian's life waiver of premium claims group had found to be disabling even from part time sedentary work only four months earlier.

42. Even while noting the absence of evidence supporting any improvement in Plaintiff's conditions or functionality, this nurse on staff with Guardian questioned whether Plaintiff was indeed limited because of the absence of a recent MRI (never mind that all the clinical information up to that point had been found by her colleagues at Guardian to support continuing disability even as to the LWOP).

43. On October 25, 2022, a note was entered indicating another APS needed to be requested and that new records needed to be furnished.

44. Three weeks later, even while Plaintiff continued to qualify for his waiver of premium benefit, Guardian's LTD claims team terminated his benefit for the internally-noted reason that because no record had been provided showing Plaintiff had an another office visit since May 2, 2022 (or within just a six month period), that Mr. Thomas was not treating "appropriately or under the care of a provider."

45. Then, without *any medical support at all*, Guardian decided Plaintiff

somehow had experienced substantial improvement in his conditions such that he had regained the capability to return to fulltime sedentary employment meeting the "gainful occupation" disability definition in his plan.

46. That claims team then issued its November 14, 2022, letter in which it announced the termination and closure of Plaintiff's LTD claim.

47. Yet while Plaintiff's LTD claim was in denial status, the life waiver of premium claim administration continued and Plaintiff continued being eligible for that benefit for another month.

48. It was later discovered after Guardian provided its claim records for both claims pursuant to Plaintiff's regulatory request that Guardian's LTD claims team had simply manufactured its reason for denial.

49. Specifically, claim notes from the life waiver of premium administrative process confirm Plaintiff remained under the continuous care of Dr. Dorchak specifically, as evidenced from another APS it had since then received dated November 17, 2022, and records it obtained documenting Plaintiff's then-recent office visit on November 22, 2022.

50. This APS and related records showed no change in Plaintiff's conditions or level of functionality since Guardian last found Plaintiff to be unable to return to work in a part-time capacity at a sedentary level just six months earlier.

51. Despite that being the reality, the life waiver of premium claims team

entered the following single-sentence finding summarily reversing its earlier findings with this cavalier entry into its claims notes.

> [illegible claim note text] BASED ON CAT REVIEW WITH CONSULTINA N, PH WOULD BE ABLE TO DO RCS WORK CLOSING LW AS EE IS NO LONGER TOTALLY DISABLED NEPTMEN

52. After receiving this pair of claim terminations, Plaintiff retained counsel, and through counsel requested production of all materials relevant to these adverse determinations pursuant to Department of Labor regulations.

53. Plaintiff lodged his appeal as to both terminations through a letter dated March 9, 2023, which included a submission of updated records and assessment information.

54. This appeal was transmitted successfully to Guardian via facsimile and Priority Mail on March 9, 2023.

55. On March 23, 2023, Guardian acknowledged receipt of the appeal and informed that a decision would be rendered "within 45 days of the date we received this appeal."

56. On April 27, 2023, Guardian sent a letter via fax informing that Plaintiff's "file was referred to a Guardian Registered Nurse Case Manager and a Vocational Rehabilitation Specialist for review."

57. Guardian also informed that its review of the claim remained ongoing and that it decided to refer Plaintiff's claim to "an independent Peer Physician Panel

Review" for further consideration. To permit that review to commence, Guardian attached an authorization for Plaintiff to complete and return as soon as possible.

58. Guardian in this letter also indicated in this letter, "Guardian requires up to an additional 45 days to continue our review", referring to the medical review above.

59. Plaintiff responded to Guardian's April 27, 2023, letter on May 1, 2023, attaching a signed copy of the authorization Guardian requested four days earlier.

60. Deeply concerned about Guardian's implication that no decision was in sight notwithstanding the passage of more than 45 days since he lodged his appeal, Plaintiff also responded directly to Guardian's assertion that it was entitled to additional time to issue a decision on his appeal.

61. Plaintiff informed Guardian that it had failed to identify a "special circumstance" supporting its need for an extension other than its failure to complete its medical review, which according to Department of Labor regulations is something that must happen as a matter of course.

62. Nevertheless, Plaintiff agreed to allow Guardian a consensual extension permitting Guardian until on or before May 12 to render a decision unless it could articulate a valid "special circumstance" justifying more time.

63. On March 9, 2023, Guardian sent a letter dated that same date asking for additional time – through June 11, 2023 -- and contending again that its need to

complete its medical review justified recognition of its assertion of an extension under Plan terms and Department of Labor regulations.

64. Plaintiff responded to Guardian's letter the following day noting that Guardian up to that point had 60 days to complete its review using vendors but had failed to do so, and reiterated again that no additional time beyond May 12 would be permitted unless Guardian could show a "special circumstance."

65. On May 12, 2023, Guardian sent a letter indicating it had returned Plaintiff's "file to the LTD and Group Claims and the Life Waiver Claims department" where "they will continue to pay his claims in accordance with the terms of the policy." That letter explained that Guardian's "willingness to do so … is done under full reservation of all of Guardian's rights under the Plan and Policy. Guardian's payment of benefits during this period is not an admission of liability for any benefits under the Plan beyond November 15, 2022."

66. The letter also indicated that its claim departments "will continue to review the file" to determine whether liability for payments beyond November 15, 2022, will be accepted as Plaintiff's appeal requested that Guardian determine.

67. Plaintiff responded to Guardian's letter on May 16 indicating his understanding that Guardian's letter did not constitute a benefit determination on entitlement to benefits, but instead was an announcement of payment under a "reservation of rights" where at a later date Guardian reserved its right to claim a

14

right to recover the amounts it was offering to pay if it found against Plaintiff upon the completion of its appeal review. Plaintiff informed Guardian that he was not able to accept the resolution proposed by Guardian unless it was "able to unequivocally confirm that payment is being made subject to an actual determination on Mr. Thomas's entitlement to benefits under these two policies, or in other words, that liability *is* accepted through today's date and on an ongoing basis, subject to the policies' continuing proof of loss requirements."

68. Plaintiff requested Guardian provide the confirmation above by 10:00am central time on May 17 to provide that confirmation. Although Guardian provided a letter in response, no such confirmation that a determination had been made and that payment was being tendered pursuant to such a determination was provided.

69. Accordingly, as of time of the filing of this Complaint, Plaintiff has not received the confirmation requested in that correspondence, nor has Plaintiff received any valid invocation of an extension or indication of tolling that would have enlarged Guardian's deadline for rendering a benefit determination.

70. But even if Guardian's claim of an extension was proper, that extension was only through June 11, 2023 according to its own correspondence. June 11th also represented the maximum period that would have been allowed when taking into account a full extension under Department of Labor Regulations.

71. As of the date of this filing, no written determination of benefits has been received. Accordingly, Plaintiff is now deemed to have exhausted his administrative remedies under Department of Labor regulations and Plan terms.

72. Although there remain questions about the completeness of the materials Guardian has produced in this case, those materials known thus far to Plaintiff establish numerous breaches and errors committed by Guardian while administering Plaintiff's claim, including:

    (a) The targeting of Plaintiff's claim for denial because ERISA governs;

    (b) The failure by Guardian to take any meaningful measures to insulate its claims process from its inherent conflict under the Supreme Court case *Glenn v. MetLife* and instead allowing its profit motive to influence its claims administration for Plaintiff;

    (c) The withholding of relevant documents and information from Plaintiff throughout the claims process and depriving Plaintiff of the ability to obtain a full and fair review of his claim;

    (d) Taking an adversarial posture against Plaintiff instead of a fiduciary posture by searching for ways to avoid paying part or all of his claim;

(e) Failing to conduct an adequate investigation, and not considering and/or according proper weight to relevant, supportive information;

(f) Failing to accord any weight to Plaintiff's medical providers who personally examined the Plaintiff on a regular basis, and instead overruling such persons by refusing to approve Plaintiff's benefit;

(g) Failing to adhere to the terms of the Plan and Department of Labor regulations, such as those governing the review of adverse benefit determinations, when a decision must be made;

(h) Purposefully limiting and curtailing the review of its medical consultants, and otherwise improperly exerting influence on them to opine against outright payment of benefits;

(i) Unreasonably and arbitrarily overruling the professionals who personally examined Plaintiff; and

(j) Failing to give Plaintiff's claim a full co-morbid review and give any consideration to how his conditions impacted one another.

73. Despite Plaintiff's established disability and entitlement to coverage under the terms of the plan applicable to LTD and group life waiver of premium

benefits, Guardian has failed to determine that he remains "disabled" and has refused to find him qualified for these benefits.

74. As set forth above in connection with Guardian's fiduciary breaches, Guardian's refusal to provide these benefits is the product of a conflict of interest whereby it allowed its own financial interests to supersede its fiduciary obligations. Under *Glenn*, this presents an additional reason for application of a *de novo* standard to their claim decision.

75. This conflict of interest further calls into question the credibility of Guardian's claims personnel and reviewers.

76. Guardian considered the applicability of ERISA before making its decision to deny Plaintiff's claim. This presents an additional reason for application of a *de novo* standard to their claim decision.

77. Guardian's decision process did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with Department of Labor regulations. In fact, Guardian did not issue any written determination *at all* on Plaintiff's appeal within the time required under the Plan and relevant regulations.

78. Plaintiff has exhausted all Plan remedies even though Guardian's failure to adhere to Plan terms or ERISA requirements and regulations did not

require it. As such, this case is ripe for judicial review.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Terry Thomas respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant the following relief:

    a.    For an order awarding Plaintiff all benefits due and owing, including specifically LTD and life waiver of premium benefits, in accordance with the terms of the Plan and Policy identified in this Complaint, as well as all prejudgment interest due thereon as permitted by law and equitable principles, pursuant to 29 U.S.C. § 1132(a);

    b.    For a judgment against the Defendant awarding Plaintiff all costs and reasonable attorney's fees incurred connected to the prosecution of and pursuit of relief in this action as permitted under 29 U.S.C. § 1132(g)(1);

    c.    For an order requiring Defendant to provide Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under The Plan; and

    d.    Such other relief as may be deemed just and proper.

Respectfully submitted,

*[signature]*

M. Clayborn Williams (ASB-9101-A43M)
**The Martin Law Group, LLC**
**Attorney for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
clay@erisacase.com

**Plaintiff's Address:**

Terry Thomas
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**Defendant's Address:**

The Guardian Life Insurance Company of America
c/o Corporation Service Company Inc.
641 South Lawrence Street
Montgomery, AL 36104